IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VELMA JONES,  )
                          )
    Plaintiff,   )
                          )
vs.                       )    No. 06 C 3577
                          )
DONALD J. DEW, President/CEO;  )
DEE HAMMOCK, Benefits/Payroll  )
Specialist; HABILITATIVE SYSTEMS, )
INC.,                     )
                          )
    Defendants.  )

## MEMORANDUM OPINION AND ORDER

Plaintiff Velma Jones brought this action against Donald Dew, Dee Hammock, and Habilitative Systems, Inc. for injuries she sustained related to her employment and subsequent termination. Plaintiff originally filed this action in state court on March 9, 2006. After an initial dismissal, plaintiff filed an amended complaint, which was removed to this court. Defendants bring this motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, we grant defendants' motion and dismiss plaintiff's complaint without prejudice.

## BACKGROUND

In reviewing a motion to dismiss under Rule 12(b)(6), we accept the complaint's well-pleaded factual allegations as true, including the inferences reasonably drawn from them. McDonald v. Household Intern., 425 F.3d 424, 425 (7th Cir.2005). The complaint should be dismissed only if the plaintiff "failed to allege any set of facts upon which relief may be

who again stated on February 16, 2004, that plaintiff was unable to work. Thereafter, on February 23, 2004, plaintiff received a letter from her employer, documenting her options for medical and disability leave, and explaining the process for applying for additional benefits under the Family Medical Leave Act ("FMLA"). Plaintiff's workman's compensation claim was denied in a report dated May 27, 2004. In a letter dated September 17, 2004, defendant Hammock indicated that plaintiff had failed to forward supporting documents from her doctor stating that she was unable to perform the essential functions of her job. Under Personnel Policy 601:2-3, the human resources department would assume that plaintiff voluntarily quit her job. Finally, in a letter dated October 5, 2004, the human resources director stated that because plaintiff failed to accept the offer of return to her employ as a Residential Manager with Habilitative Services, Inc., her termination would be effective September 28, 2004.

Plaintiff now brings this claim alleging wrongful termination/retaliatory discharge, intentional infliction of emotional harm, and violation of the FMLA, 29 U.S.C. § 2601 *et seq.*

## DISCUSSION

As our jurisdiction turns on the success or failure of plaintiff's FMLA claim, we begin our analysis there. Defendants correctly state that the FMLA entitles an eligible employee to a total of 12 unpaid workweeks of leave during any 12-month period for a serious health condition. 29 U.S.C. § 2612.[1] Plaintiff suggests that defendants "padded" the record to indicate that plaintiff's injury was not work-related, thus causing her to be denied benefits, workman's compensation, and insurance benefits (am. cplt, ¶ 37). Plaintiff further suggests that such

---

[1] Section 2612 was recognized as unconstitutional in Touvell v. Ohio Dept. Of Mental Retardation and Developmental Disabilities, 422 F.3d 392 (6th Cir.2005) as the "self-care" provision relates to state liability. *See also* Toeller v. Wisconsin Dept. of Corrections, 461 F.3d871 (7th Cir.2006). As plaintiff is employed by a private organization, such determinations are inapposite.

granted." Pickrel v. City of Springfield, Ill., 45 F.3d 1115, 1118 (7th Cir.1995). *See also* Conley v. Gibson, 355 U.S. 41, 45-46 (1957). And given that plaintiff appears *pro se*, her complaint is held to "'less stringent standards than formal pleadings drafted by lawyers,' and can be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Henderson v. Sheahan, 196 F.3d 839, 845-46 (7th Cir.1999) (internal citations omitted).

We take the following facts from the plaintiff's complaint. Plaintiff was employed with defendant Habilitative Services, Inc. from December 24, 1991, until her termination on September 28, 2004. During the course of her employment, plaintiff made formal complaints – often on behalf of patients – regarding rat infestation at Habilitative Services. In 2003, the rat problem was ignored and worsened, and led to deterioration of plaintiff's physical and mental health. Plaintiff's complaints to her supervisors, managers, and the CEO, defendant Dew, were met with indifference, humiliation, and at least one racial slur. Due to the rat infestation and her supervisors' reactions to her complaints, plaintiff suffered mental and physical health problems requiring medical and psychological treatment. On February 16, 2004, plaintiff's doctor verified plaintiff's health complaints and indicated that her work-related conditions would prevent her from returning to work. Even so, defendants treated plaintiff's condition as non-work related, and she was denied benefits under the Workman's Compensation Act. Although plaintiff was not medically released to return to work until November 14, 2004, defendants terminated her employment effective September 28, 2004.

Attached to her complaint, plaintiff included 16 exhibits, documenting her medical treatment and correspondence with her employers and benefits providers. Her exhibits show the following. Plaintiff began medical leave on January 22, 2004, at the direction of Dr. Scott,

actions "circumvent[ed] the 'intent' of the Family Medical Leave Act." (*Id.*, at ¶ 38).

Plaintiff's complaint, in conjunction with the exhibits attached thereto, details the following timeline. Plaintiff was "injured" on December 2, 2003. (*Id.*, at ¶ 8). Plaintiff took medical leave beginning on January 22, 2004. (*Id.*, at exh. 1). On February 23, 2004, plaintiff received a letter specifying defendant's policy for disability benefits and medical leave. (*Id.*, at exh. 3). The letter indicates that plaintiff would receive an initial leave of absence for a period not to exceed 90 days from the last day worked, upon receipt of doctor's statement. The letter continues: "You may request an extension to your leave if needed, and if available without pay, under the Family Medical Leave Act.... The time you spend on your disability leave will be credited toward the twelve (12) weeks of leave without pay under the Family and Medical Leave Act; Policy 604." (*Id.*). Plaintiff was terminated from her employment effective September 29, 2004. Counting either from December 2, 2003 or January 22, 2004, plaintiff was granted more than the 12 weeks guaranteed under the FMLA.

The FMLA does require that the employer continue to "maintain coverage under any 'group health plan' for the duration of such leave at the level and under the conditions coverage would have been provided if the employee had continued in employment continuously for the duration of such leave." 29 U.S.C. § 2614(c)(1). Plaintiff's complaint implies that she was forced to pay excessive medical bills out of her own pocket (am.cplt,, ¶ 37). If defendant employer violated § 2614, plaintiff may have an FMLA claim. It appears, however, from the letter of February 23, 2004, that plaintiff continued to receive medical insurance coverage under Habilitative Systems Inc.'s HMO medical insurance policy (*id.*, at exh. 3), at least for some period of time. Although we liberally construe plaintiff's complaint in her favor, if we read plaintiff's complaint and exhibits correctly, plaintiff has essentially

pled herself out of court. Henderson, 196 F.3d at 846 (although a *pro se* plaintiff's complaint is held to less stringent standards than formal pleadings drafted by lawyers, "a *pro se* complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint"). Therefore, we dismiss plaintiff's FMLA claim, without prejudice, in case plaintiff may be able to amend her complaint to successfully allege that defendants did in fact violate the FMLA.

Our jurisdiction over plaintiff's claims rests on her FMLA claim. In the usual course, we would dismiss the remainder of plaintiff's state law claims. Because, however, plaintiff has already been through the state court system and her claims are easy to deal with at this stage, we address them now.

In Illinois, to state a claim for retaliatory discharge plaintiff must plead that she has been discharged; the discharge was in retaliation for the employee's activities; and the discharge violates a clearly mandated public policy. Greary v. Telular Corp., 793 N.E.2d 128, 133-34 (Ill.App.Ct.2003). Illinois courts have construed the common law claim of retaliatory discharge narrowly, generally in only two situations: (1) where assertion of a worker's compensation claim leads to employee's discharge (Kelsay v. Motorola, Inc., 384 N.E.2d 353 (1978)), and (2) where discharge stems from the employee's "whistle-blowing" activities (Palmateer v. Int'l Harvester Co., 421 N.E.2d 876 (1981)). *See also* Greary, 793 N.E.2d at 134.

Plaintiff clearly asserts retaliatory discharge based on whistle-blowing activities. Specifically, she asserts that she made numerous formal complaints to her supervisors and defendant Dew, regarding the alleged rat infestation. She further alleges that the rat problem, in addition to the retaliation she suffered for making complaints, led to severe emotional and mental distress, causing her to take a medical leave of absence from her job.

Effective January 1, 2004, the Illinois state legislature passed the Illinois Whistleblower Act, 740 ILCS 174/1 *et seq* ("Act"). Under that Act "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15. Although only a few courts have construed the Act, there is some indication that the Act codifies, and therefore preempts, any common law retaliatory discharge claim based on whistle-blowing activities. *See* Sunderland v. Norfolk Southern Ry. Co., 826 N.E.2d 1021, 1026, n4 (Ill.App.Ct.2005) ("The 'whistleblower' cause of action has since been codified in the Whistleblower Act"); Sprinkle v. Lowe's Home Centers, Inc., 2006 WL 2038580, *5 (S.D.Ill.2006) (The Illinois Whistleblower Act is the codification of the common law claim of retaliatory discharge). *Cf.* Krum v. Chicago Nat. League Ball Club, Inc., 851 N.E.2d 621 (Ill.App.Ct.2006) (because plaintiff could not satisfy the first element of the common law claim for retaliatory discharge, the court did not reach the question of whether the Whistleblower Act preempted plaintiff's claim). The legislative history of the Act supports this contention. The House bill sponsor stated his belief that there was no cause of action for retaliatory discharge stemming from disclosing a violation of law to the authorities, and that "[c]ommon sense would tell you that you should have that protection and this law would codify that." IL H.R. Trans. 2003 Reg. Sess. No. 63. Thus, we treat the Act as a codification of the common law tort of retaliatory discharge based on whistle-blowing activities, and determine whether plaintiff's claim falls within the ambit of the Act.

We find that it does not. Plaintiff clearly alleges that she made formal complaints to her supervisors and CEO of Habilitative Systems, Inc. She does not allege that she made any complaints to a government or law enforcement agency. Thus, she falls outside the protections

of the Act. Smith v. Madison Mut. Ins. Co., 2005 WL 1460301, *1 (S.D.Ill.2005) ("While the Act prevents retaliation against an employee who disclosed information to a government or law enforcement agency, it does not protect an employee who disclosed information to her own company").

It is unclear from plaintiff's complaint whether she also complains of wrongful discharge based on her claims for workman's compensation. At some point plaintiff did apply for workman's compensation and was denied such benefits (see am. cplt. exhs. 5,9). Although it was unclear when she made her original claim, plaintiff stopped working due to physical and mental ailments on December 2, 2003, was denied workman's compensation benefits on May 27, 2004, and was terminated on September 28, 2004. As noted above, Illinois courts have allowed for claims of retaliatory discharge where plaintiff was discharged for filing a claim under the Workman's Compensation Act. Kelsay, 384 N.E.2d 353; Clemons v. Mechanical Devices, Co., 684 N.E.2d 1344 (Ill.App.Ct.1997). See also Fiumetto v. Garrett Enterprises, Inc., 749 N.E.2d 992, 996-997 (Ill.App.Ct.2001) (finding a claim for retaliatory discharge where plaintiff was discharged in retaliation for seeking benefits under the Unemployment Act). Plaintiff's complaint summarizes her retaliatory discharge claim: "That as a result of plaintiff [sic] WRONGFUL TERMINATION which also was RETALIATORY in nature due to her constant incident reports concerning the rat infested condition at HABILITATIVE SYSTEMS, INC, and the deliberate neglect and abuse of patients, she has suffered in her reputation, her work record is now damaged, excessive medical bills that Habilitative Systems, Inc, insurance company was suppose [sic] to cover but refused; stress on her and her family; high blood pressure and a mental disability that will effect [sic] her now for the rest of her life" (am. cplt, ¶ 28). It seems to us apparent from this statement that plaintiff was not asserting

a retaliatory discharge claim based on her workman's compensation or other benefits claim. Thus, we dismiss plaintiff's retaliatory discharge claim. We dismiss, however, without prejudice, so that plaintiff can amend her complaint to state a claim for discharge in retaliation for filing for benefits if applicable.

We turn to plaintiff's claim for intentional infliction of emotional distress.[2] Plaintiff claims that "the problems with the rats...and rat dropping[s] created a work environment that caused plaintiff...to suffer from an unusual condition of snorting and hysterics that has caused her permanent emotional and mental disability" (am. cplt, ¶ 33). Defendants argue that such a claim is barred by the two-year personal injury statute of limitations. We agree that the statute of limitations for intentional infliction of emotional distress in Illinois is two years. Feltmeier v. Feltmeier, 798 N.E.2d 75, 85 (Ill.2003); Pavlik v. Kornhaber, 761 N.E.2d 175, 186 (Ill.App.Ct.2001). Plaintiff's complaint establishes that she initially left her employment with Habilitative Systems, Inc. on December 2, 2003 (am. cplt, ¶ 8) and her medical leave began on January 22, 2004 (id., at exh. 1). Her original complaint was filed in the Circuit Court of Cook County on March 9, 2006. This is clearly more than two years after her injury.

Illinois courts have noted that the "'purpose of a statute of limitations is certainly not to shield a wrongdoer; rather it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions.'" Hyon Waste Management Services, Inc. v. City of Chicago, 574 N.E.2d 129, 132 (Ill.App.Ct.1991) (citing Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc., 334 N.E.2d 160 (Ill.App.Ct.1975)). The statute of limitations period begins to run when the party's interests are invaded. Id. In cases of

---

[2]Plaintiff titled Count II "Deliberate Indifferent to Velma Jones Health and Job Security." Like defendants, we read such a claim to allege intentional infliction of emotional distress.

continuing violations, the statute of limitations does not begin to run until the tortious acts cease. Pavlik, 761 N.E.2d at 186-87. "A continuing violation, however, is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." Hyon Waste Management Services, Inc., 574 N.E.2d at 132-33 (citing Ward v. Caulk, 650 F.2d 1144 (9th Cir.1981)). In this case, as defendants suggest, the last day of plaintiff's injury was the last day of her employment with Habilitative Services, Inc. Therefore, her intentional infliction of emotional distress claim is barred by the two-year statute of limitations.

Finally, individual defendants Dew and Hammock argue that they must be dismissed because plaintiff has failed to make any allegations as to their individual conduct. Because we dismiss plaintiff's complaint in its entirety, we dismiss it against all defendants and need not address this argument.

## CONCLUSION

For the reasons stated herein, we dismiss plaintiff's complaint without prejudice.

JAMES B. MORAN
Senior Judge, U. S. District Court

Dec. 13, 2006.